## COMMONWEALTH *vs.* THOMAS WATSON.

Suffolk.   March 30, 1891. — June 25, 1891.

Present: ALLEN, HOLMES, KNOWLTON, & MORTON, JJ.

*Complaint — Jurisdiction of Municipal Court — Evidence — Registering Bets — Pool Selling.*

It is not necessary, to constitute an offence under the St. of 1885, c. 342, § 1, that the defendant's business should embrace both registering bets and buying or selling pools; if it embraces one of them, it is within the statute; if it embraces more than one, it still may be one business and one offence.

A witness who testifies to a transaction as taking place on a certain day may be allowed to refresh his recollection from a memorandum of the transaction made by him on the night of that day.

A complaint, addressed to the Municipal Court of the city of Boston, charging the defendant, after the allegations of city, county, and State, with committing an offence "within the judicial district of said court," is sufficient as to place to give the court jurisdiction.

A complaint alleging that the defendant, in a certain room "occupied with apparatus, books, and devices . . . for the purpose of registering bets and of selling pools upon the results of trials and contests of skill, speed, and endurance of men . . . and upon the results of games and competitions, was present then and there in said room engaged in the business and employment of selling pools upon the result of a certain game, the same being a trial and contest of the skill of men, to wit, a game of base-ball, to be played by men," charges an offence within the St. of 1885, c. 342, § 1.

On a complaint for being present in a room, occupied with apparatus for the purpose of selling pools upon the results of games and competitions, engaged in the business and employment of selling pools upon results of games of base-ball, there was evidence that in the room were blackboards with rows of names, numbered from one to sixteen, understood by a witness to indicate certain base-ball clubs, each row being different from the other. A witness testified that he asked the defendant for No. 10, which read "Brook., Pitts., Cleve., Phila.," paid some money and received a ticket with 10,456 printed on it and 10 pencilled underneath; and that afterwards he saw the defendant and asked him if combination 10 had won, to which the defendant answered, No. The witness was then permitted to testify that "combination 10" meant the four names in the row numbered 10, and that, as far as he knew, the names signified base-ball clubs. *Held,* that the defendant had no ground of exception.

Two of the witnesses testified that the transaction was a pool, although they saw no fund, and did not know of other persons making wagers at the time. The presiding judge refused to rule that there was no evidence to warrant a conviction, and also that certain specified transactions were wagers in pools; but instructed the jury that he did not suppose all betting was selling pools, defined pools in accordance with a decision of this court, with amplifications, and directed them, unless they found that the defendant was thus engaged in the business of selling pools, that they must acquit him. *Held,* that the defendant had no ground of exception.

COMPLAINT, addressed to the Municipal Court of the city of Boston, alleging that " Henry Chase of the city of Boston in the county of Suffolk, in behalf of the Commonwealth of Massachusetts, on oath complains that Thomas Watson at Boston aforesaid, and within the judicial district of said court, with force and arms, in a certain room situated within said city and district, which said room was then and there occupied with apparatus, books, and devices, a further description whereof is to said Chase unknown, for the purpose of registering bets and of selling pools upon the results of trials and contests of skill, speed, and endurance of men, beasts, birds, and machines, and upon the results of games and competitions, was present then and there in said room, engaged in the business and employment of selling pools upon the result of a certain game, the same being a trial and contest of the skill of men, to wit, a game of base-ball, to be played by men."

In the Superior Court, on appeal, before the jury were impanelled, the defendant renewed a motion filed by him in the Municipal Court, to quash the complaint, on the following grounds : " 1. No offence at common law or under the statute is charged. 2. That the part of the city of Boston in which the room charged is situated is not described or set out or located by description, the jurisdiction being merely asserted. 3. The selling of pools and registering of bets is not charged as the business and employment. 4. Nor the name of the keeper or occupant of the room charged set forth or charged, nor charged as being unknown to the complainant. 5. Nor when, where, or by whom the game of base-ball charged was to be or was played." *Barker*, J. overruled the motion.

At the trial there was evidence that the room in question contained a small box office, a number of settees, and two blackboards on which were written names, as Washington, Pittsburgh, New York, and Philadelphia ; that across the top of one of the blackboards was written the word " Brotherhood " ; that at the left edge of this blackboard was a column of figures running from 1 down to 16; that opposite each number were written four abbreviations of names, those in the first line as read from left to right being " Buff., Pitts., Cleve., Chic.," and in the second line the first three of these repeated with the

addition of "Phila.," and opposite the figure 10, "Brook., Pitts., Cleve., Phila." One Randall, a witness for the government, testified that on July 1, 1890, he visited the room, having been there several times during the month before; that the defendant was standing on the floor, and he went up to him and asked him for No. 10, and gave him some money; that the defendant said nothing, but went into the office and immediately returned and gave him a ticket, at the top of which was printed "10,456," and underneath, the figure 10 was written with a lead pencil; that afterwards he saw the defendant and asked him "if combination 10 had won"; and that he knew that the transaction in which he participated was a pool, but did not know of any other person making a wager at the time. To the question, "What did combination 10 mean?" this witness was permitted, against the defendant's objection, to answer, "It is four names placed on the blackboard right along in a row; that is a combination, and there are sixteen of these rows, four names in each row. They are different. Ten is one special row." To the question, "What do these names on the blackboard signify?" he was permitted, under like objection, to answer, "As far as I know they signify base-ball clubs." And the defendant excepted.

One Lent testified that he accompanied Randall on his visit to the room in question, that he knew that the transaction participated in by Randall and the defendant was a pool, but that he did not see any fund of money, but knew that there was one, and understood that the defendant held it and made payments from it; that he did not know of anybody else participating in the transaction; and that on the same night after he got home he made a memorandum on a slip of paper of the position of the numbers and names on the blackboard. This witness was then allowed, against the defendant's objection, to use this memorandum to refresh his recollection; and the defendant excepted.

The defendant requested the judge to instruct the jury as follows: "1. There is no evidence in this case upon which the jury can find the defendant guilty of the offence charged. . . . 3. Also, that equal or unequal amounts risked against other equal or unequal amounts by or between one or more, one or more to

be determined by the result of an uncertain event, or series of uncertain events, is not a pool. It is a wager. 4. Also, that if the jury find from the evidence that the paper in evidence was part of a transaction by which Randall was to receive any definite amount of money in case the Brooklyn, Pittsburgh, Cleveland, and Philadelphia base-ball clubs should all win in certain contests between themselves and some other club, which were to be played at any certain time, or about July 1, 1890, and should not win or receive any money if either one of said clubs should fail of winning in such contest, and that the sole business and employment in which the defendant was engaged was in making like wagers with customers, of which the transaction with Randall was one of a series, that is a variance, and the jury should find a verdict of not guilty."

The judge refused so to instruct, but instructed the jury, among other things, as follows: "It is not necessary to prove that he sold any particular pool. It is not necessary to show just exactly what was done in that place every day. The charge is not for keeping the place, nor for selling pools, but for being in such a place engaged in the business of selling pools. Where an uncertain event or series of uncertain events are so combined, and all stakes are so combined as to go to the winner, that is a pool; and I also give you the instruction that a pool, generally speaking, is a combination of stakes, and within the meaning of the law a pool is money that has been paid in by those who have bought a right in it, and which is to be paid over to the winner if he gets the right number in a game of chance. "Pool" is a word of common acceptance. You see it in the newspapers, and hear it in common conversation, and you know its definition, very likely, and what its acceptation when applied to the business of selling pools in the community. I do not suppose all betting is selling pools, but certainly those things are pools which I have defined. If you believe there was this place on July 1, fitted up as charged in the complaint, and the defendant was there engaged in the business of selling pools, you should find him guilty. If you are not satisfied of this, you should find him not guilty."

The jury returned a verdict of guilty; and the defendant alleged exceptions.

*T. J. Morrison*, for the defendant.

*A. E. Pillsbury*, Attorney General, for the Commonwealth.

HOLMES, J.   The motion to quash, and the exception to allowing the witness to refresh his memory from a memorandum made by him on the night of the transactions testified to, are disposed of by the case of *Commonwealth* v. *Clancy*, *ante*, 128. In the present case the defendant is complained of for being present in a room occupied, etc., and engaged in the business and employment of selling pools upon the result of a game of base-ball.   It is unnecessary to state the evidence in detail.   In the room were blackboards with rows of four names, understood by the witnesses to be names or abbreviations of names of base-ball clubs, each row being different from the others, and the rows being numbered from 1 to 16.   One witness asked the defendant for No. 10, which read, "Brook., Pitts., Cleve., Phila.," paid some money, and received a ticket numbered 10,456 in print, with 10 upon it in pencil.   Afterwards he saw the defendant, and asked him if combination 10 had won, to which the defendant answered, No.   The first exception is to allowing this witness to testify that combination 10 meant the four names in the row numbered 10, and that, as far as he knew, the names signified base-ball clubs.   If the jury were not warranted in inferring as much without evidence, we are of opinion that the witness who bought the ticket, and who had been at the place a number of times, might be found by the judge to be qualified to testify to the meaning of the words used by himself and the defendant.   Certainly we are far from being able to say that the finding was clearly wrong.   *Nunes* v. *Perry*, 113 Mass. 274, 276. *Commonwealth* v. *Sturtivant*, 117 Mass. 122, 137.

A ruling was asked that there was no evidence warranting a conviction; also that certain specified transactions were wagers, not pools.   These were refused, but the judge instructed the jury that he did not suppose all betting was selling pools, defined pools as in *Commonwealth* v. *Ferry*, 146 Mass. 203, 208, with amplifications, and directed them that, unless they found the defendant was thus engaged in the business of selling pools, they must acquit him.   The natural inference from the form of the transaction, the witness selecting a number and paying his money with nothing said as to the defendant's undertaking,

would be that it was selling a pool, not making an ordinary bilateral wager. Two of the witnesses said that it was a pool. It is true that they saw no fund, and did not know of other persons making a wager at the time, but their testimony, if believed, carried conviction as to what the transaction purported, and therefore impliedly was admitted and affirmed by the defendant to be. The elements making up the implication would be difficult to reproduce, and yet there might be no doubt of the meaning understood by all concerned, even if there was not a word spoken.

We discover no error in the trial.    *Exceptions overruled.*