COMMONWEALTH *vs.* PHILIAS J. CHAGNON.

Middlesex.   April 6, 1953. — June 2, 1953.

Present: QUA, C.J., LUMMUS, WILKINS, WILLIAMS, & COUNIHAN, JJ.

*Betting.   Conspiracy.   Words,* "Registering bets."

Even assuming that an indictment sufficiently alleged a conspiracy be-
tween the defendant and another to register bets in violation of G. L.
(Ter. Ed.) c. 271, § 17, a conviction was not warranted by evidence
merely that the defendant sent a large number of telegrams with
money orders aggregating a substantial amount from a telegraph
office in Massachusetts to his alleged fellow conspirator in another
State as bets on horse races in various places, and received from him
and indorsed and cashed sundry telegraphic money orders for win-
nings, and that the defendant knew that his alleged fellow conspirator
was a "bookie."

INDICTMENT, found and returned on October 2, 1951.

The case was heard in the Superior Court by *Hudson,* J.

*Robert H. Beaudreau,* for the defendant.

*Ephraim Martin,* Assistant District Attorney, for the
Commonwealth.

COUNIHAN, J.   This defendant was found guilty upon an
indictment[1] charging in effect that he and one Mooney
conspired to commit the crime of registering bets on the
results of horse races.   After having waived a jury, he was

---

[1] "The Jurors, for the Commonwealth of Massachusetts on their oath
present, That Philias J. Chagnon, otherwise called Paul Adams, and J. Mooney
. . . between the first day of January in the year of our Lord one thousand
nine hundred and fifty and the first day of October in the year of our Lord
one thousand nine hundred and fifty-one, in the County of Middlesex afore-
said, did conspire together to commit . . . the crime of registering bets
upon the result of a trial and contest of skill, speed and endurance of man,
beast, bird or machine."

tried by a judge, found guilty, and sentenced. It does not appear that Mooney has ever been arraigned or tried.

The case comes here upon the defendant's exceptions to the denial of his motion for a "finding for the defendant," to the denial of certain of his requests for rulings, and to the admission of evidence.

The material evidence may be summarized as follows: The defendant over a period from January 3, 1950, to June 25, 1951, caused to be sent to one "Jno Mooney, East St. Louis, Illinois," approximately 347 telegrams with money orders aggregating about $30,121.89. They were sent from an office of the Western Union Telegraph Company, hereinafter called the company, in Hudson at the request of and for the defendant by one Fahey, the manager of that office. Original records of these telegrams and money orders were in evidence. They were all in Fahey's handwriting and were sent in the name of Paul Adams, an alias used by the defendant. They were all sent as bets on the results of horse races in various parts of the United States and Cuba. The defendant furnished the money to make these bets. The method of making such bets was to write out a telegram accompanied by a money order for the amount bet upon a horse and send it to Mooney. The following sample is illustrative of the practice, "Mr. Kilroy [name of horse] 40–0–0," meaning $40 on the horse to win and nothing for finishing second or third. Acknowledgment of receipt of the telegrams and money orders was sent by telegraph by Mooney to the defendant under the name of Paul Adams. The defendant under the same alias received from Mooney during the same period approximately 77 telegraphic money orders for about $26,796.75 which could have been found to be winnings. These were all indorsed by the defendant and in most instances were cashed by him at the company's office in Hudson. Questioned by the chief of police of Marlboro the defendant said nothing more than that he knew Mooney was a "bookie" and that he had placed a bet with him once in a while in 1944 and 1945. When arrested on October 9, 1951, the defendant had on his person

a telegram from Mooney to him quoting odds on the results of football games.

At the close of the evidence the defendant filed a motion for a "finding for the defendant," which was denied, and certain requests for rulings of which the following were refused. "2. Upon all evidence and the law the defendant is entitled to an acquittal. 3. The prosecution on all the evidence has not made out a case of unlawful conspiracy as charged." "7. The evidence does not support the unlawful object of the alleged conspiracy. 8. The prosecution has not shown by all the evidence beyond a reasonable doubt that there existed an unlawful conspiracy in which the defendant was involved with another individual." The motion has no standing as such and we do not consider it for any purpose because the requested rulings which were denied properly raised the question whether the evidence was sufficient to warrant a conviction. We are of opinion that at least request numbered 2 should have been granted and that as a result the defendant should have been acquitted.

The familiar and classic description of what constitutes criminal conspiracy in this Commonwealth was set forth by Chief Justice Shaw in *Commonwealth* v. *Hunt*, 4 Met. 111, where at page 123 he said, "a conspiracy must be a combination of two or more persons, by some concerted action, to accomplish some criminal or unlawful purpose, or to accomplish some purpose, not in itself criminal or unlawful, by criminal or unlawful means. We use the terms criminal or unlawful, because it is manifest that many acts are unlawful, which are not punishable by indictment or other public prosecution; and yet there is no doubt, we think, that a combination by numbers to do them would be an unlawful conspiracy, and punishable by indictment." Compare *Commonwealth* v. *Waterman*, 122 Mass. 43, 57. This general principle was affirmed in *Commonwealth* v. *Dyer*, 243 Mass. 472, where at page 485 it was said, "It is the consensus of opinion that conspiracy as a criminal offence is established when the object of the combination is either a crime, or if not a crime, is unlawful, or when the means

contemplated are either criminal, or if not criminal, are illegal, provided that, where no crime is contemplated either as the end or the means, the illegal but non-criminal element involves prejudice to the general welfare or oppression of the individual of sufficient gravity to be injurious to the public interest." From these descriptions of elements necessary to establish the crime of conspiracy it follows that a conspiracy, agreement, or combination to do an act which is not criminal or unlawful as prejudicial to the general welfare, by means which are not criminal or unlawful, is not an indictable offence.

At the outset of our consideration of this case we must examine the indictment itself and the position taken by the Commonwealth in connection with it. The Commonwealth in its brief and at the oral argument contended that the conspiracy of which the defendant was found guilty was one to violate G. L. (Ter. Ed.) c. 271, § 17.[1]

No violation of that part of § 17 emphasized in the margin is alleged in the indictment, and nowhere in the evidence can be found any suggestion that either the defendant or Mooney did anything violative of that part of § 17. We do not therefore consider it as relevant.

The indictment significantly does not allege a conspiracy to violate § 17 as such but merely alleges a conspiracy between the defendant and Mooney "to commit . . . the

---

[1] "Whoever keeps a building or room, or any part thereof, or occupies, or is found in, any place, way, public or private, park or parkway, or any open space, public or private, or any portion thereof, with apparatus, books or any device, for registering bets, or buying or selling pools, upon the result of a trial or contest of skill, speed or endurance of man, beast, bird or machine, or upon the result of a game, competition, political nomination, appointment or election, or whoever is present in such place, way, park or parkway, or any such open space, or any portion thereof, engaged in such business or employment; or, being such keeper, occupant, person found or person present, as aforesaid, registers such bets, or buys or sells such pools, or is concerned in buying or selling the same; or, being the owner, lessee or occupant of a building or room, or part thereof, or private grounds, knowingly permits the same to be used or occupied for any such purpose, or therein keeps, exhibits, uses or employs, or knowingly permits to be therein kept, exhibited, used or employed, any device or apparatus for registering such bets, or for buying or selling such pools, or *whoever becomes the custodian or depositary for hire, reward, commission or compensation in any manner, of any pools, money, property or thing of value, in any manner staked or bet upon such result,* shall be punished by a fine of not more than two thousand dollars or by imprisonment for not more than one year" (emphasis supplied).

crime of registering bets" upon horse races. But register-
ing bets as such is not made a crime by § 17. What is
criminal is the keeping of a building or room, or occupying
or being found in any place, with apparatus, books or device
for registering bets, and the registering of bets by such
keeper, occupant, person found or person present in such a
place. Despite the provisions of c. 271, § 28 (misnomer and
variance), c. 277, § 34 (immaterial defects), and c. 277, § 40
(bill of particulars), it does not appear to us that any crim-
inal or unlawful act is in substance set forth in the indict-
ment and certainly no evidence of any criminal or unlawful
means has been shown. *Commonwealth* v. *Hunt*, 4 Met. 111.
*Commonwealth* v. *Eastman*, 1 Cush. 189. *Commonwealth* v.
*Shedd*, 7 Cush. 514. *Commonwealth* v. *Prius*, 9 Gray, 127,
128. *Commonwealth* v. *Wallace*, 16 Gray, 221, 222–223. In
passing it may be well to quote from *Commonwealth* v.
*Eastman* where at page 226, citing with approval a Penn-
sylvania case of *Hartmann* v. *Commonwealth*, 5 Barr, 60, it
was said, "but if the object of the conspiracy be to do an
act which is an offence merely by statute, the intended
purpose must in such case be set forth with so much detail,
as may be necessary to bring it within the description of the
statute offence." Obviously the indictment in this case
did not do this.

But assuming that this indictment was in form sufficient
to allege a conspiracy to violate § 17, which we seriously
doubt, the evidence at the trial falls short of sustaining a
conviction. There was no evidence that either the de-
fendant or Mooney conspired to register bets as a keeper,
occupier, person found or present in any place "with ap-
paratus, books or any device, for registering bets." "Regis-
tering bets" as such has been defined in *Commonwealth* v.
*Clancy*, 154 Mass. 128, 133–134, and in *Sullivan* v. *Voren-
berg*, 241 Mass. 319, 321. In both of these cases bets were
placed, in a room where apparatus, books or other devices
were present for that purpose, by a bettor who received a
written memorandum by the person taking or "registering"
the bet. Compare *Commonwealth* v. *Ferry*, 146 Mass. 203,

207–208. In the present case it is equally consistent from the evidence to infer that the defendant was merely placing bets for himself with Mooney. See *Commonwealth* v. *Watson*, 154 Mass. 135, 139–140. We do not pause to consider whether such conduct constitutes a crime, for that is not the charge upon which he was indicted. It may be well to note, however, that the only statutes referring to the placing of bets which have been brought to our attention have no applicability. See c. 271, § 1 (penalty for winning money by gambling); § 2 (gaming at cards, dice or other game in a public conveyance or public place, and so forth); § 6 (gaming at cattle shows, and so forth); and § 42 (betting on a boxing match).

Because of what we have said we do not consider the exceptions relating to evidence.

*Exceptions sustained.*
*Judgment reversed.*