150 So.2d 763

**Fred L. SHUTTLESWORTH**

v.

**STATE.**

**6 Div. 865.**

Court of Appeals of Alabama.

March 5, 1963.

Orzell Billingsley, Jr., and Peter A. Hall, Birmingham, for appellant.

MacDonald Gallion, Atty. Gen., and Leslie Hall, Asst. Atty. Gen., for the State.

**PER CURIAM.**

This prosecution originated in the Jefferson County Court of Misdemeanors. From a judgment of conviction an appeal was taken to the circuit court, where the defendant was found guilty, by the court without a jury, under the first Count of the solicitor's complaint, which reads:

"The State of Alabama, by its Solicitor, complains of Fred L. Shuttlesworth That, * * * he did conspire with person or persons unknown to accomplish a criminal or unlawful purpose, to-wit: to cause a mob to gather at the Greyhound Bus Station in the

City of Birmingham, Alabama, on the 17th day of May, 1961 for the purpose of provoking a breach of the peace."

The court imposed a fine of $500.00.

A demurrer was interposed and was overruled. The grounds of demurrer are that the complaint does not allege facts sufficient to charge an offense and that the defendant is not apprised of what he is called upon to defend.

"Conspiracy is an offense which especially demands the application of the rule that an indictment shall state, with as much certainty as the nature of the case will permit, the facts which constitute the crime intended to be charged. They should be stated in such a way as clearly to apprise the accused of the crime with which he stands charged and thus enable him to prepare his defense thereto." 11 American Jurisprudence, Conspiracy, Sec. 29, pg. 562.

While the crime intended to be accomplished by the conspiracy need not be stated with the accuracy or detail that would be necessary in an indictment for the commission of the offense itself, the essential elements of the substantive offense constituting conspiracy must be stated, 11 Am.Jur., supra.

The State in its brief contends that the conspiracy charged was one to violate Section 119(1) of Title 14, Code 1940.

If the object of the conspiracy is to do an act which is an offense merely by statute, the intended purpose must be set forth with so much detail as may be necessary to bring it within the description of the statutory offense. Commonwealth v. Chagnon, 330 Mass. 278, 113 N.E.2d 50.

The cases of Du Bose, Jr., v. City of Montgomery, 41 Ala.App. 233, 127 So.2d 845; Mitchell v. State, 41 Ala.App. 254, 130 So.2d 198, cert. den., 272 Ala. 707, 130 So.2d 205, and Abernathy v. State, 3 Div. 101 Court of Appeals Ms, involved the particular offense of "breach of the peace," and although the crime intended to be accomplished by the conspiracy need not be set out in the complaint with as great certainty as is required in an indictment for the commission of the offense itself, we think what has been pointed out concerning the inadequacy of the charges in those cases illustrates our view that the object of the conspiracy was not described with sufficient detail to bring it within the description of the statutory offense.

If the offense is not defined by statute it may be charged as at common law. Breach of the peace is a recognized offense at common law, and it is generally sufficient to designate the contemplated crime by its common law generic name, but since the term "breach of the peace" embraces an endless variety of acts and incidents, see Vol. 5 Words and Phrases, Permanent Edition, the general language used here does not sufficiently inform the accused of the crime with which he was charged. We are of the opinion the complaint does not sufficiently state facts to show the commission of any offense either under the statute of this state or at common law.

Since the cause must be reversed for the reasons stated, we will not determine the legal sufficiency of the evidence to support a criminal charge, except to say that we doubt the evidence is sufficient to show a conspiracy to cause a "mob" to gather.

In Words and Phrases, Vol. 27, Permanent Edition, "Mob", p. 639, it is said:

"Rapalje, in his Dictionary, defines a 'mob' as 'an assemblage of many people acting in a tumultuous and riotous manner, calculated to put good citizens in fear and endanger their persons and property.' In 15 Am. & Eng.Enc.Law, p. 698, the term 'mob' has been defined as 'an unorganized assemblage of many persons intent on unlawful violence; a riot involving a multitude.' In the common dictionaries the word 'mob' is defined as a disorderly crowd; a promiscuous as-

·semblage of rough, riotous persons; a rabble; and they show that it is a French term imported into our language during the reign of Charles II. Alexander v. State, 50 S.W. 716, 717, 40 Tex.Cr.R. 390 [395]."

The evidence for the defendant tended to show that the co-ordinating secretary of the "Nashville Non-Violent Movement" telephoned the defendant on the night of May 16, and notified him a group would be leaving Nashville next day "to pick up the freedom rides;" that defendant warned that a previous ride had been attended with violence and dangerous incidents and advised against their coming, but early next morning the secretary called and informed him the group was already on the bus enroute to Birmingham; that defendant then suggested that the officials should be notified the students were coming and protection for them be requested and he offered to and did send the telegrams from Birmingham to be sure the officials received the information.

The tendencies of the State's evidence are that the defendant caused to be sent to certain officials of the State and of the City of Birmingham, the following telegram:

"We have definite information that students from Nashville are enroute to Birmingham Montgomery and points south on a ride for freedom others may arrive from Atlanta. They will be arriving Bham via Greyhound shortly after eleven today departure time uncertain. Please use powers of your office to see that these citizens reach all points of their destinations and are afforded full protection while at stations within your jurisdiction."

That he notified also the press and wire services of the impending arrival of the so-called "Freedom Riders;" that the bus arrived around noon and there were four to eight hundred people, both white and colored, gathered in the vicinity of the bus terminal; that some of the people were pretty noisy and one person yelled, "You all take the police away, and we will move the other people out," and one man was complaining to the officers, and "he was pretty hot." The defendant was seen in and around the bus station and when it was deemed advisable to take the Freedom Riders "into protective custody," the defendant stood between the group and the Police Chief and said, "If you are going to carry them to jail, I am going too," and the defendant was arrested when he refused to move.

The judgment is reversed and the cause remanded.

Reversed and remanded.