COMMONWEALTH *vs.* MINA J. ASSIMAKOPOULOUS. December 3, 1981. The defendant has appealed from his conviction on an indictment which charged him with conspiring with one Dylewicz "to register bets upon the results of trials and contests of skill, speed and endurance of man, to wit: athletic contests in violation of Mass. Gen. Laws, c. 271, Sec. 17."

1. We are of opinion that the indictment sufficiently charges a conspiracy to register bets in the manner proscribed by the portion of § 17, as appearing in St. 1968, c. 116, which is incorporated in the indictment by reference and which states, "Whoever keeps a building or room . . . with apparatus, books or any device, for registering bets . . . upon the result of a trial or contest of skill, speed or endurance of man . . . or upon the result of a game, . . . being such keeper, occupant, person found or person present, as aforesaid, registers such bets . . . ." Contrast *Commonwealth* v. *Chagnon*, 330 Mass. 278, 281-282 (1953).

2. The denial of the defendant's motion under Mass.R.Crim.P. 25(a), 378 Mass. 896 (1979), made at the conclusion of the evidence (the defense presented *no* evidence) and after the verdict raises the question whether the verdict was warranted on the evidence. *Commonwealth* v. *Latimore*, 378 Mass. 671, 678-679 (1979). The Commonwealth's evidence came from records of intercepted telephone conversations and the testimony of two State police officers, experts in the field of gaming. The officers gave their opinions as to the meaning of the telephone conversations which were obtained through wiretaps and of certain exhibits in evidence. The opinions were necessary, as the import of the evidence of the intercepted telephone communications would be of little meaning to the average juror.

Our examination of the transcript and the exhibits leads us to the conclu-
sion that the only findings warranted by the evidence were that the de-
fendant and Dylewicz were two friendly competitors operating sports bet-
ting businesses at a high level and, as one officer testified, "You have [here]
two people who are in control of two separate illegal gaming organiza-
tions . . . . They have their own people that book for them . . . . These
people are at the top, they're comparing notes. They live a co-existence
and don't want to infringe on anybody else's business . . . . They don't
want to get hurt. The other guy to help him, he helps him, because
tomorrow he may have information on something else for the same con-
versations." The other officer testified that the two men were from separ-
ate operations discussing "lines." ("Lines" refer to the point spread
which, we gather, is used in the place of odds on a favorite team, i.e., if
the line on a game is seven and a bet is placed on the favorite, that team
must win by a margin of seven points in order for the bettor to win.) The
officer further testified that "they don't want to get burnt either, so be-
cause of the geographic location in the area of the state working they sep-
arate operations and they want their lines fairly close so they won't get
burnt, the bettors won't jump from one to the other." Although the infor-
mation passed between the two men could have been helpful in their ap-
parently well established gaming operations by guarding them against
"getting burnt" because of bad information on a line and could be useful
to them as a means of avoiding disparate odds being offered to bettors
which could result in their shopping around,[1] there is no indication that
the two agreed to employ any particular line as binding on them in accept-
ing bets. Moreover, there is nothing in the evidence which would warrant
a jury in finding an agreement to do anything toward the object of regis-
tering bets or to do anything else made unlawful by G. L. c. 271, § 17.
Contrast *Commonwealth* v. *Nelson,* 370 Mass. 192, 196-197 (1976). We
need not again discuss the elements of conspiracy which have often been
stated in decided cases, as to which see, among others, *Commonwealth* v.
*Dyer,* 243 Mass. 472, 483-485 (1922), cert. denied 262 U.S. 751 (1923);
*Commonwealth* v. *Gill,* 5 Mass. App. Ct. 337, 340, 348-349 (1977); *Com-
monwealth* v. *Cook,* 10 Mass. App. Ct. 668, 670-671 (1980). The essence
of a conspiracy is an unlawful agreement. *Commonwealth* v. *Judd,* 2
Mass. 329, 337 (1807). *Commonwealth* v. *Chagnon,* 330 Mass. at 280.
*Commonwealth* v. *Soule,* 6 Mass. App. Ct. 973 (1979). *Commonwealth*
v. *Cook, supra.* As the Commonwealth failed to establish the essential

---

[1] "Bookmakers may cooperate with one another by keeping their 'lines' consistent
in order to avoid 'middling,' whereby a bettor, because there are two different
point spreads on a single event, may bet and win on both competing teams."
*United States* v. *George,* 568 F.2d 1064, 1067 n.4 (4th Cir. 1978).

element of an agreement, the defendant's motion for a required finding of not guilty should have been allowed.

*Judgment reversed.*

*Verdict set aside.*

*Judgment for the defendant.*

*Roger J. Brunelle* for the defendant.

*Lynn Morrill Turcotte*, Assistant District Attorney, for the Commonwealth.