## COMMONWEALTH *vs.* PATRICK CLANCY.

Suffolk.    March 30, 1891. — June 25, 1891.

Present: ALLEN, HOLMES, KNOWLTON, & MORTON, JJ.

*Complaint — Municipal Court of Boston — Jurisdiction — Registering Bets — Pool Selling — Evidence.*

It is not necessary to a conviction on a complaint under the St. of 1885, c. 342, § 1, that the defendant's business should embrace both registering bets and buying or selling pools; if it embraces one of them, it is within the statute; if it embraces more than one, it still may be one business and one offence.

A complaint addressed to the Municipal Court of the city of Boston charging the defendant, after the allegations of city, county, and State, with committing an offence " within the judicial district of said court," is sufficient as to place to give the court jurisdiction.

A complaint alleging that the defendant, in a certain room " occupied with apparatus, books, and devices . . . for the purpose of registering bets and selling pools upon the results of trials and contests of skill, speed, and endurance of men and beasts, was present then and there in said room engaged in the business and employment of registering bets upon the result of a certain trial of speed of beasts, to wit, upon the result of the racing of certain horses whose speed was to be tried by racing," charges an offence within the St. of 1885, c. 342, § 1.

On a complaint under the St. of 1885, c. 342, § 1, there was evidence that in the room in question, which contained an office, stood a blackboard with names and figures thereon, understood by a witness who had been there many times to be the names of horses and jockeys; that another witness copied from the blackboard certain names understood by him to be those of horses, and asked the defendant, who had been seen there repeatedly before marking on the blackboard, what he would give him on them, and the defendant answered twenty to one; that the witness then gave the defendant some money and the list of names, and the defendant went into the office, stopped a minute, returned and gave the witness a ticket with the words " Combination Play or Pay " printed at the top, and with " 1st Race," " 2d Race," etc., printed in a column underneath, and the names selected by the witness written against certain of the races thus : " 1st Race, Picknicker ½," " 7th Race, Tattler ½," etc., and at the bottom of the ticket was written " 10 / 50." *Held,* that the evidence was sufficient to warrant a conviction.

A witness who testifies to a transaction as having taken place on a certain day may properly be allowed to refresh his recollection from memoranda made by him respecting the transaction on the night of that day.

At the trial of a complaint on the St. of 1885, c. 342, § 1, for being present in a room engaged in the business of registering bets, the presiding judge, in giving an instruction requested by the defendant, added that the defendant was as liable for what he directed others to do illegally in his presence as if he did it himself, and refused to instruct them, as the defendant requested, that if the defendant made a bet and another registered it, or if the jury found that the transaction in evidence was selling pools, the defendant was not liable. *Held,* that the defendant had no ground of exception.

COMPLAINT, in two counts, to the Municipal Court of the city of Boston. The second count differed from the first count only in respect to the time alleged. The first count was as follows: " To the Justices of the Municipal Court of the city of Boston, holden at said Boston for the transaction of criminal business, within the county of Suffolk: Henry Chase of the city of Boston in the county of Suffolk, in behalf of the Commonwealth of Massachusetts, on oath complains that Patrick Clancy of said Boston, on the twenty-fifth day of June in the year of our Lord one thousand eight hundred and ninety, at Boston aforesaid, and within the judicial district of said court, with force and arms, in a certain room situate in said city and district, and then and there occupied with apparatus, books, and devices, a further description of said apparatus, books, and devices being to said Chase unknown, for the purpose of registering bets and selling pools upon the results of trials and contests of skill, speed, and endurance of men and beasts, was present then and there in said room engaged in the business and employment of registering bets upon the result of a certain trial of speed of beasts, to wit, upon the result of the racing of certain horses whose speed was to be tried by racing."

In the Superior Court, on appeal, before the jury were impanelled, the defendant renewed a motion filed by him in the Municipal Court to quash the complaint for the following reasons, which alone are material: " 1. No offence at common law or under the statute is charged. . . . 3. That part of the city of Boston in which the rooms charged are situated is not set out or described or located by description, the jurisdiction being merely asserted in each count. 4. The selling of pools and registering of bets is not charged in either count as the business employment. 5. Nor the name of the keeper or occupant of the rooms set out or charged, nor charged as being unknown to the complainant, nor the time, place, or name when, where, or by whom the speed and endurance of the horses and beasts is to be tried and contested, set out or charged as unknown." *Barker*, J. overruled the motion, and the defendant excepted.

The defendant was then tried, and one Randall, a witness for the government, testified that on June 25, 1890, he visited the room in question and there saw the defendant; that the room

contained blackboards and two offices, and the defendant was standing on a platform in front of the blackboards; that he stood in front of the blackboards a few minutes, and wrote the names Picknicker, Tenney, Beck, and Tattler on a paper, and asked the defendant what he would give him on them; that the defendant said, "I will give you twenty to one"; that he gave the defendant some money, which the defendant took with the paper into one of the offices, and came back with the change in front of the blackboard, and gave it to him, and he then went to the office and another man gave him a ticket; that he had been in the room ten or twelve times, some of the times before June 25; that one Lent was with him that day; that aside from the defendant's taking this money and giving him change, he saw the defendant marking at the blackboard, — what he did not now know; and that the names written on the paper and given by him to the defendant were names of horses so far as he knew. On cross-examination, Randall testified that before he spoke to the defendant he had the names of horses written on a paper, and handed that paper to the defendant. In answer to the question, also put to him on cross-examination, "You wrote these four names on a ticket without knowing of your own knowledge whether they were the names of horses, yachts, engines, or anything else, handed it to him, and said, 'How much will you give me on this?'" Randall replied, "I cannot say positively that they were names of horses, but understood they were names of horses." He also testified that he had been in there prior to June 25, and had got acquainted with Clancy, and had never seen him sell or offer to sell a ticket that he remembered of; that at the times when he was in there Clancy was engaged in marking on the blackboard something that was called out; that he gave him $2.00 and got $1.50 back; that Clancy stopped in the office a minute or so before giving him the change, and brought the change back; that when Clancy came out he then went into the office, and got the ticket, not from the defendant, but from some one else; that he saw no one else give any money to the defendant, or give money to make a stake against witness; that he heard no one offer to bet with him; that he saw no money put up; that nobody stated to him the terms of any bet; that no one told him that Pick-

nicker or Tattler was running a race, or name other horses running with them; and that he saw no person make any record in writing of any race between horses or anything that day.

Lent was called as a witness for the government, and testified that he went with Randall on June 25, and saw Randall write on paper and hand the paper to the defendant, and ask what he would give, and saw him take the paper and money into a little office and return with the change, which he gave to Randall; that in a few moments Randall went to the ticket-hole in the office; that while Randall and the defendant were talking about change, he saw a man in the office writing on the ticket which Randall took; that he saw columns of names and figures on the blackboard which he took to be horses and jockeys' names; and that he had been there at other times.

The ticket given by the defendant to Randall was in evidence. It was printed on pasteboard, and was about two and a half inches wide by four inches long. At the middle of the top, printed in plain type, were the figures 326, beneath which in one line was the letter T, followed by the word "Combination," and in a second line the words "Play or Pay." Under these and to the left was printed in a column, "1st Race," "2d Race," etc., up to "8th Race," and filling the spaces opposite respectively, "1st Race," "3d Race," "5th Race," and "7th Race," were written with a lead pencil the names "Picknicker $\frac{1}{2}$," "Beck $\frac{1}{2}$," "Tenney $\frac{1}{2}$," "Tattler $\frac{1}{2}$." At the bottom appeared the figures "10/50," written with a lead pencil.

Randall was allowed to refresh his recollection from memoranda made mostly from memory by him on the night of June 25, after the transaction; and the defendant excepted.

The defendant requested the judge to rule that there was no evidence upon which the jury could find the defendant guilty of the offence charged; the judge refused so to rule, and instructed the jury that there was evidence for them to consider upon the complaint; and the defendant excepted.

The defendant also requested the judge to give, among others, the following instructions to the jury: "5. The evidence must show beyond a reasonable doubt that a registration of a bet was made by the defendant, or the jury should acquit; that the defendant was engaged as a business and employment in the registering of

bets, of which the one shown in evidence is one of a series, or the jury should acquit. . . . 7. If the jury find that the defendant sold the ticket and made any bet, and the same was not recorded or registered by the defendant, but by some other person, the jury should acquit the defendant. 8. If the jury find that the transaction in evidence was selling pools, they should acquit."

The judge refused to give the seventh and eighth instructions requested, but gave the fifth, adding thereto : " Of course you have already learned that where illegal business is carried on, where more than one takes part, whatever one man does by directing others or instructing others in his presence, this is something for which he is as liable as if he did it himself."

The jury returned a verdict of guilty; and the defendant alleged exceptions.

*T. J. Morrison,* for the defendant.

*A. E. Pillsbury,* Attorney General, for the Commonwealth.

HOLMES, J. The motion to quash was properly overruled. The complaint charges an offence under the St. of 1885, c. 342, § 1. That statute makes it criminal to be present in a room occupied with apparatus, books, or devices for the purpose of registering bets, or of buying or selling pools, upon the result of a trial of the speed of beasts, etc., engaged in the business of registering bets, or of buying or selling pools upon the result of a trial of the speed of beasts, etc. It is not necessary that the defendant's business should embrace both registering bets and buying or selling pools. If it embraces one of them, it is within the letter and the intent of the statute. If it embraces more than one, it still may be one business and one offence. *Commonwealth* v. *Ferry,* 146 Mass. 203, 208. *Commonwealth* v. *Moody,* 143 Mass. 177.

As the jurisdiction of the Municipal Court of the city of Boston does not extend to the whole city, it is necessary to allege the place more particularly than otherwise would be sufficient. We are of opinion that the established formula, "within the judicial district of said court," following the allegations of city, county, and State, is sufficient to give the court jurisdiction. *Commonwealth* v. *Hoar,* 121 Mass. 375. If it is in a sense a conclusion of law, so are many allegations of pleading. *Winsmore* v. *Greenbank,* Willes, 577, 583. *Windram* v. *French,* 151

Mass. 547, 551.  Evans, Pl. 138, 139, 143, *et seq.*  Evans, Pl. (2d ed.) 147, 152, *et seq.*  But if the district had had a proper name, and had been designated by it, probably no one ever would have questioned that the allegation was one of fact, and sufficient.  2 Battle's Dig. 729, pl. 1.  In its present form it is an issuable allegation.  *United States* v. *Anderson,* 17 Blatchf. 238.  *United States* v. *Jackalow,* 1 Black, 484, 487.  It is equivalent to an allegation that it was within some one of the wards mentioned in the Pub. Sts. c. 154, § 42, defining the judicial district in question, and it gives the same information as if couched in that form.  *People* v. *Breese,* 7 Cowen, 429, 430.  Those wards are established by statute.  St. 1886, c. 283.  St. 1888, c. 437.  The other objections insisted upon are disposed of by *Commonwealth* v. *Ferry,* 146 Mass. 203.

The next question is whether there was any evidence warranting a verdict against the defendant.  There can be no doubt that the transactions described by the witnesses purported to be the registering of a bet on the result of certain horse races, or that the room was occupied with apparatus for that purpose. There stood in the room blackboards with names and figures, understood to be names of horses and jockeys by a witness who had been there many times.  Another witness copied from the blackboard certain names which he understood to be names of horses, and asked the defendant what he would give him on them.  The defendant answered twenty to one.  The witness gave the defendant some money and the list of names, and the defendant went into the office, stopped a minute, returned and gave the witness his change, the sum paid by the witness being half a dollar, and then another man in the office gave the witness a ticket with the words " Combination Play or Pay " printed at the top, then the words " 1st Race," " 2d Race," etc., printed in a column, and the names selected by the witness written against certain of the races thus : " 1st Race, Picknicker $\frac{1}{2}$," " 7th Race, Tattler $\frac{1}{2}$," etc.  At the bottom was written "10," and then, separated by a line, " 50," which it would not be a very violent conjecture to take as signifying the combination and the sum paid by the witness.  If the jury found that this transaction purported to be a bet on a horse race, they were warranted in finding that the defendant understood that it purported to be so, and by the part he took in it admitted and affirmed that

there were horses of the names given, and that they were expected to take part in races. Therefore the defendant cannot escape on the ground that the witnesses never had seen the horses of these names. It is plain that the blackboards and printed tickets were kept in the rooms for the purpose for which they were used on this occasion. The defendant had been seen there before repeatedly, marking on the blackboards, it may be inferred for the same purpose. It does not matter that he did not fill out the ticket personally. The testimony showed that he directed it to be filled out. Filling out the ticket was registering a bet, whether the memorandum was more or less intelligible. It is not a question of satisfying a statute like the statute of frauds, but of making a memorandum intended by the parties to be a minute of a bet. The statutory offence was proved if the witnesses were believed.

The witness was properly allowed to refresh his memory from memoranda made by him on the night of the transaction. *Commonwealth* v. *Ford*, 130 Mass. 64.

The refusal of certain requests for rulings calls for little remark. The offence charged is being present in the room engaged in the business of registering bets. Any one taking part in transactions having for their object and result registering bets is engaged in the business, and most plainly so, when, as the jury might have found here, what he does not do in person he commands or procures to be done. The seventh request, therefore, was properly refused, and the additions to the fifth excepted to were correct. The eighth was properly refused. We are told that it is common knowledge that registering bets is an alternative system, which is taking the place of selling pools. But we suppose that selling pools is betting, and that issuing a memorandum of the sale is technically registering a bet, whatever may be the distinction in the language of those engaged in the business. Moreover, if we should assume to know all that was stated at the bar as common knowledge, we should have some difficulty in seeing any ground for the suggestion that the transaction could have been found to be selling a pool. The jury were required to find that the defendant was engaged in the business of registering bets, and registering bets was defined to them in the words of the defendant's counsel.

*Exceptions overruled.*