JOSEPH P. SULLIVAN & another *vs.* SIMON VORENBERG.

Suffolk.    March 8, 1922. — April 22, 1922.

Present: RUGG, C.J., BRALEY, DE COURCY, CROSBY, & CARROLL, JJ.

*Landlord and Tenant,* Covenants in lease.    *Gaming.*

The lessor in a lease of premises in the city of Boston containing a covenant that "the premises shall be used for business purposes only," and that "no use shall be made thereof which shall be unlawful, improper, noisy, or offensive or contrary to any law of the Commonwealth or ordinances or by-laws of the City of Boston," has a right to terminate the lease for breach of the covenant upon it appearing that, with the knowledge and acquiescence of the lessee's manager and other employees, professional bookmakers frequented the leased premises for the purpose of receiving bets upon horse races and making memoranda thereof on slips of paper delivered to the bettor, and that the patrons of these bookmakers habitually met them upon the premises for the purpose of placing their bets with them.

BILL IN EQUITY, filed in the Superior Court on March 12, 1921, seeking to enjoin the defendant from interfering with the plaintiffs' enjoyment of premises described in a lease from the defendant to the plaintiffs and to have the lease declared in full force and effect.

The suit was referred to a master. Material facts found by the master are described in the opinion. The suit was heard upon the master's report by *Sanderson,* J., by whose order there were entered an interlocutory decree confirming the report and a final decree dismissing the bill. The plaintiffs appealed.

*W. A. Buie,* for the plaintiffs.

*L. Withington,* (*W. J. Pike* with him,) for the defendant.

CARROLL, J. The plaintiffs, the lessees of the store 169 Summer Street, Boston, under a written lease for the term of ten years from June 15, 1917, by this bill in equity seek to restrain the defendant, their lessor, from interfering with their occupation of the premises and ask that the lease be declared to be in full force and effect. The plaintiff Hartnett sold her interest in the business conducted on the premises to Sullivan before suit was brought. Sullivan appointed one Haley as general manager in control of the business. The master found that the plaintiff

Sullivan used the premises as a saloon for the sale of intoxicating liquor to be drunk on the premises, in accordance with a license from the city of Boston, until the federal legislation went into effect; and since that time he has continued the occupation as a saloon for the sale of non-intoxicating beverages. In 1917 a "ticker" was placed in the premises. Its printed matter consisted of the news of the day, quotation of stocks, reports of horse races, and sporting events. The store is near the whole-sale cotton, woollen and leather district and the ticker contained quotations of the current prices of these articles. The premises, to a considerable extent, were resorted to by people seeking the information thus furnished. The master also found that professional gamblers and bookmakers frequented the saloon for the purpose of "making books" or receiving bets upon horse races conducted outside the Commonwealth and that their customers habitually met them there or called them on a public telephone, located in a booth in the saloon, for the purpose of making bets on these races and that the ticker was used by the bookmakers and their customers to ascertain the result of the races. No blackboard or permanent fixtures other than the ticker and telephone were used by the bookmakers in carrying on their business in the plaintiff's saloon. All the other equipment was carried in their pockets. It consisted of printed paper blocks containing tables of the races with the names of the horses and the weight carried. The odds were written in this printed sheet in pencil. When a person placed a bet and delivered the money, the book-maker gave him a memorandum of the bet, written on a sheet of paper taken from this paper block. Early in 1920 a number of men were arrested on the premises charged with illegal gaming; on March 5, 1921, police officers again visited the saloon and arrested seventeen men for the offence of being present where gaming instruments were discovered, and it was found that the premises were habitually resorted to for illegal gaming. Immediately following the raid of March 5, 1921, the defendant gave notice of the termination of the lease, under G. L. c. 139, § 19. The lease contained the covenant that "the premises shall be used for business purposes only," and that "no use shall be made thereof which shall be unlawful, improper, noisy, or offensive or contrary to any law of the Commonwealth or ordinances or by-

laws of the City of Boston." The case is before us on the plaintiff's appeal from a decree dismissing the plaintiff's bill.

The burden of proof was upon the plaintiff under the pleadings to show that none of the covenants of the lease was broken, that the premises were not used for an unlawful purpose or contrary to any law of the Commonwealth. It is settled that the buying or selling of pools or the registering of bets is illegal gaming in this Commonwealth. G. L. c. 4, § 7, cl. 10. And it is made a criminal offence to keep or assist in keeping a building or place used or kept for "the buying or selling of pools or registering of bets upon any race, game, contest, act or event." G. L. c. 271, §§ 5, 23. Every building, place or tenement resorted to for illegal gaming shall be deemed a common nuisance. G. L. c. 139, § 14. And the keeper of such a nuisance may be punished by fine and imprisonment. G. L. c. 139, § 15. The receiving of a bet upon a horse race and making a memorandum of it on the slip of paper delivered to the one making the bet is in fact the registering of a bet and is illegal gaming under the statutes of this Commonwealth. Professional bookmakers frequented the plaintiff's rooms for this purpose and their patrons habitually met them there in order to place their bets with them. And further, such use of the premises was with the knowledge and acquiescence of the plaintiff's manager and with the knowledge and acquiescence of the other employees of the plaintiff Sullivan. *Suit* v. *Woodhall,* 113 Mass. 391, 395. *Mann* v. *United Motor Boston Co.* 226 Mass. 495, 497. This was clearly in violation of the covenant of the lease prohibiting the use of the premises for an unlawful purpose or contrary to any law of the Commonwealth. The defendant could terminate the lease for breach of its covenants and the decree dismissing the plaintiff's bill was right.

Under G. L. c. 139, § 19, if a tenant used the leased premises for illegal gaming such use shall at the election of the lessor annul the lease. He has the right of possession and may make immediate entry on the premises. We do not, however, find it necessary to consider the bearing of this statute on the rights of the parties. See, in this connection, *Healy.* v. *Trant,* 15 Gray, 312; *O'Connell* v. *M'Grath,* 14 Allen, 289; *Commonwealth* v. *New York Central & Hudson River Railroad,* 202 Mass. 394, 397; *Chase* v. *Proprietors of Revere House,* 232 Mass. 88. The tenant as found by the master

used the premises in an unlawful manner; and for this breach of the covenant, without relying on his rights under G. L. c. 139, § 19, the lessor could under the terms of the lease enter and repossess himself of his former estate and expel the lessee.

*Decree affirmed with costs.*