COMMONWEALTH *vs.* JOHN A. BOYLE
(and a companion case between the same parties).

Suffolk. February 4, 1963. — May 1, 1963.

Present: WILKINS, C.J., SPALDING, WHITTEMORE, KIRK, & REARDON, JJ.

*Betting. Witness,* Expert witness. *Evidence,* Opinion: expert.

A finding that a police officer with extensive experience in the field of gaming activities was qualified to testify as an expert on gambling and gambling paraphernalia was warranted by the evidence at the trial of indictments under G. L. c. 271, §§ 7, 17. [3–4]

At the trial of indictments under G. L. c. 271, §§ 7, 17, the nature of slips of paper found in the defendant's possession and the meaning of entries on the slips were proper subjects of expert testimony by a police officer qualified as an expert; and there was no error in permitting the witness to characterize the slips as "bookie" slips related to the "number pool." [4]

Evidence that one was found in possession of packaged bills and coins and envelopes containing slips of paper upon which were columns of figures headed by letters, together with expert testimony as to the nature of the slips and the meaning of the entries thereon, warranted his conviction upon indictments severally alleging that he "was concerned in the setting up of a certain lottery for money, to wit: the so called number pool" and "was found . . . with certain apparatus . . . and other devices for the registering of bets upon the *results*" of horse races. [4–5]

INDICTMENTS found and returned on January 8, 1962.

The cases were tried in the Superior Court before *Quirico, J.*

Commonwealth *v.* Boyle.

*Walter J. Hurley* for the defendant.

*Lawrence L. Cameron,* Assistant District Attorney (*John F. O'Donnell* with him), for the Commonwealth.

REARDON, J.    The defendant was convicted upon two indictments which severally alleged that "on the thirtieth day of December . . . [1961 he] was concerned in the setting up of a certain lottery for money, to wit: the so called number pool," and that on the same day he "was found [on William J. Day Boulevard in Boston] with certain apparatus, books and other devices, for the registering of bets upon the results of trials and contests of the skill, speed and endurance of . . . horses." The defendant was tried concurrently on an indictment charging him with corruptly offering a gift or gratuity to a police officer. He was acquitted on that charge. The proceedings were subject to G. L. c. 278, §§ 33A–33G. The defendant assigns as error (1) the qualification of a witness as an expert on gambling and gambling paraphernalia, (2) the admission in evidence of certain testimony given by that witness, and (3) the refusal of the trial judge to grant his motions for directed verdicts.

On December 30, 1961, at about 12:55 P.M., Arthur C. Cadegan, Junior, a deputy superintendent in charge of supervising the Dorchester, Roxbury, and Brighton districts with particular emphasis on bookmaking activities, received a telephone call. His caller, who identified himself as "Mr. Cassidy," said he had some very valuable information to disclose. As a result of this call, Cadegan and Detective John Leary, in Leary's car, proceeded to a rendezvous with the caller on Day Boulevard near the Head House within an hour. A man approached the car, identified himself as "Cassidy," and sought to speak to Cadegan alone. Cadegan then walked with him to a car parked near by whereupon "Cassidy" identified himself as the defendant, John A. Boyle. They seated themselves in this car and Boyle inquired, "Why can't we do business together?" and thereupon placed a flat package of bills against Cadegan's coat. Cadegan responded, "You damn bookmakers think you can

buy anything," and thereupon placed Boyle under arrest for attempting to bribe a police officer. Boyle was escorted to the rear seat of Leary's car and taken to police headquarters. While en route, Cadegan noticed Boyle bent over with his hands touching the base of the rear seat. Upon arrival at headquarters Boyle was booked on suspicion of bribery of a police officer and was subjected to a search. This produced $800.81 in packaged bills and coins, and also six envelopes containing slips of paper upon which were columns of figures headed by letters. An additional $700 in bills was discovered a short time later when Detective Leary returned to his car and removed the rear seat.

At the trial, a police officer, John F. Doherty, was called to testify. He had been a police officer for almost nineteen years and served on the gaming squad for thirteen years. He had investigated over one thousand gaming cases, testifying in court relative to them approximately the same number of times. On about fifty occasions he had examined slips similar to those found on the defendant. He gave as his opinion that the slips were "memos between the bookmaker or office and the agent or writer." He further testified that the figures on the slips represented amounts received "[f]or writing the number pool play and the horse racing play" and gave a detailed analysis of what the various entries on the slips meant. In cross-examination Doherty said that he had not in his experience encountered slips identical with those found on Boyle. He stated, however, that while the entries on the slips might represent "an unlimited number of other financial activities," he considered the slips to be "obviously booking paraphernalia."

1. The judge did not err in finding the witness Doherty qualified as an expert on gambling and gambling paraphernalia. He had had extensive experience in the field of gaming activities. "Whether the witness possessed the qualifications adequate to enable him to testify as an expert rested in the first instance with the trial judge, and his decision was conclusive unless it appeared upon the evidence to be erroneous as matter of law." *Commonwealth* v.

*Capalbo,* 308 Mass. 376, 380. See *Commonwealth* v. *Chapin,* 333 Mass. 610, 627.

2. As an expert the jury were entitled to his help in unraveling the complexities of that type of accounting found on the slips which were seized. His clear analysis was a valuable aid to the jury. ''There is no prescribed formality for the admission of expert testimony. All that is necessary is that the subject matter be one about which special knowledge beyond that possessed by the average juryman will aid the jury in their deliberations, and that a person possessing such knowledge give opinions pertinent to the issues of the case founded upon facts which either are conceded or could warrantably be found upon other evidence.'' *Lovasco* v. *Parkhurst Marine Ry.* 322 Mass. 64, 67. *Commonwealth* v. *Makarewicz,* 333 Mass. 575, 591–592. The witness possessed special knowledge and the opinions which he rendered bore relation to the facts which the jury could have found. Nor was there error in permitting Doherty to characterize the slips as ''bookie'' slips related to the ''number pool.'' See *Commonwealth* v. *Chapin, supra,* 625.

3. There was no error in the refusal to grant the defendant's motions for directed verdicts. The indictments charged offences in the words of the statute and were sufficient. G. L. c. 277, § 79. *Commonwealth* v. *Carlson,* 331 Mass. 449, 450. There was adequate evidence to sustain a jury finding of guilt. In *Sullivan* v. *Vorenberg,* 241 Mass. 319, 321, it was stated that the receiving of a bet, the making of a memorandum, and delivery of a slip to the bettor were enough to prove an offence. *Commonwealth* v. *Pasquale,* 334 Mass. 669, in turn, held an offence to have been committed when the defendant had in his possession a memorandum made out by the bettor. It is now clear that possession of gaming apparatus anywhere is punishable. *Commonwealth* v. *Wetherell,* 340 Mass. 422, 424. The possession of any recorded memorandum intended to be a minute of a bet is sufficient to demonstrate a violation of either G. L. c. 271, § 7, or § 17, or both of these sections, depending upon the contents of the memorandum. See G. L.

c. 271, §§ 20 and 27; *Commonwealth* v. *Clancy,* 154 Mass. 128, 134; *Commonwealth* v. *Carlson,* 331 Mass. 449, 450–451. See also *Commonwealth* v. *Laudate,* 345 Mass. 169, 171–172. Whether the slips might have had a use only in connection with innocent transactions was for the jury to decide. *Commonwealth* v. *Carlson, supra,* 451.

*Exceptions overruled.*